Cite as 2021 Ark. App. 310

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-20-331

| | |
|---|---|
| KALOB FRANKE | Opinion Delivered SEPTEMBER 1, 2021 |
| APPELLANT | |
| | APPEAL FROM THE POPE |
| V. | COUNTY CIRCUIT COURT |
| | [NO. 58CV-19-75] |
| CLINTON WILLIAM HOLLAND | |
| REVOCABLE TRUST UAD AUGUST | HONORABLE DENNIS CHARLES |
| 9, 2010; AND CLINTON WILLIAM | SUTTERFIELD, JUDGE |
| HOLLAND, INDIVIDUALLY AND AS | |
| TRUSTEE OF CLINTON WILLIAM | |
| HOLLAND REVOCABLE TRUST | |
| UAD AUGUST 9, 2010 | |
| APPELLEES | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Kalob Franke appeals the Pope County Circuit Court's March 16, 2020 order granting summary judgment to appellees, Clinton William Holland Revocable Trust UAD August 9, 2010 (Trust), and Clinton William Holland, individually and as trustee of the Trust. The circuit court dismissed Franke's negligence claims, and Franke argues on appeal that the court erred in finding that appellees owed him no duty of care as a matter of law. We affirm.

I. *Facts*

The Trust owns an event venue located on Highway 64 in Clarksville, Arkansas. Holland, as owner and trustee of the Trust, rented the property to Laquarius Jackson, and they verbally agreed that Jackson would pay $1000 for twenty-four-hour use of the property

for a party on October 20, 2018. Jackson paid a $500 deposit, and they agreed that Jackson would be responsible for any damage done to the property and that he would return it in a clean condition. Jackson had rented the property for parties four other times with no incidents of violence. Hundreds of people, including Franke, attended Jackson's October 20 party, during which one or more guns were fired into the crowd. Franke was shot twice and severely injured.

On February 11, 2019, Franke filed a complaint against appellees alleging that he is paralyzed as a result of his injuries and that Holland, as owner and trustee, is responsible. He claimed,

> [Holland] authorized the event to take place at this location and, in fact, received consideration in exchange for permitting this event to take place. Despite knowing of the event, and despite knowing the number of likely patrons that would attend, that the attendees included underage persons, and that alcohol would be consumed on site during the event, [Holland] did not ensure that adequate security was provided or that patrons or attendees were warned of the possible dangers associated with the lack of security at the site.

Franke alleged negligence based on (1) failure to use ordinary care to maintain the premises in a reasonably safe condition and to protect the patrons from reasonably foreseeable injury at the hands of other patrons, and (2) failure to warn that the venue was not safe.[1] He sought damages for medical expenses; pain, suffering, and mental anguish; lost earnings and lost earning capacity; scars and disfigurement; caretaking expenses; and punitive damages.

---

[1]Franke also alleged claims for negligent hiring, retention, and supervision of security staff. However, he filed a motion for partial voluntary nonsuit without prejudice of those claims, and on December 11, 2019, the circuit court granted the motion. In Franke's notice of appeal, he abandoned any pending but unresolved claims. *See* Ark. R. App. P.–Civ. 3(e)(vi) (2020).

Appellees responded collectively, denying liability. On November 4, they filed a motion for summary judgment arguing for dismissal.[2] Appellees attached to their motion a transcript of Holland's deposition stating that he had rented the property to Jackson, there were no records other than the receipts for payment, and there was no agreement other than that Jackson would be responsible for any damage and that the property had to be returned clean by noon the next day. Holland had no rule about alcohol, and he said that "if they rent it, it's theirs." He said that law enforcement had never been called to any event in the past and that no one had been injured at any previous event. He said that Jackson always returned the property in a clean condition and that he never found bottles on the property after Jackson's events. He said that he was not aware of any security having been hired and that he had not interviewed, hired, or trained any security personnel. Appellees also attached a transcript of Franke's deposition wherein he described having been shot while dancing at the party on October 20. Jackson stated that he heard numerous gunshots after he had been shot. Jackson had attended several events at the venue in the past, and he had never before seen or heard of any violence at the venue.

In their brief, appellees argued that they did not owe Franke a duty under the doctrine of caveat lessee and that they had not expressly accepted responsibility for third-

---

[2]On December 30, Holland moved individually for summary judgment, arguing that he did nothing but act within his fiduciary capacity as trustee and that the negligence claim against him should be dismissed with prejudice. He acknowledged that if the court granted the global summary-judgment motion, the claims against him would be resolved.

party criminal activity.[3] They argued that they did not assume a duty to provide security and that the "prior similar incidents test" is not applicable because Franke was not Holland's invitee. Alternatively, they argued that even if Franke was an invitee, Holland did not owe him a duty to protect against an unforeseeable criminal attack.

In Franke's responsive brief, he argued that caveat lessee does not apply to this case and that his claim is for ordinary negligence and not premises liability.[4] He claimed that the relaxed duty applicable to a landowner to protect from criminal acts cannot apply to a case wherein the landowner concedes that no criminal act occurred, and even if it did, appellees violated that duty.

After a hearing on January 28, 2020, the circuit court granted appellees' motion for summary judgment, dismissing Franke's complaint with prejudice against appellees.[5] Relying on *Bartley v. Sweetser*, 319 Ark. 117, 890 S.W.2d 250 (1994), the circuit court held that appellees owed no duty to protect Franke from the criminal act of a third party and reasoned as follows:

---

[3]The caveat lessee doctrine is the general rule that unless a landlord agrees with his tenant to repair leased premises, he cannot, in the absence of statute, be compelled to do so or be held liable for repairs. *Propst v. McNeill*, 326 Ark. 623, 932 S.W.2d 766 (1996).

[4]Franke attached the following exhibits: (1) Johnson County commercial property card; (2) excerpts of Holland's deposition; (3) photographs of the property; (4) receipts for Jackson's payments for use of the property; (5) flyer advertising "Freaky Friday Pajama Jam"; (6) flyer advertising "JJ's Birthday Bash Pre-Game Party"; (7) photograph of picture of the tickets taken for the October 20 party; (8) excerpts of Franke's deposition; (9) flyer advertising "JJ's Birthday Bash"; and (10) Johnson County Sheriff's Office incident report for the shooting on October 21, 2018.

[5]The circuit court denied as moot, without prejudice, Holland's individual motion for summary judgment.

The Arkansas Supreme Court first analyzed whether a landlord owes "a duty to provide reasonable security from foreseeable criminal acts" against a tenant or social guest in *Bartley*[, *supra*]. There, the plaintiff tenant had been raped by two men, one of whom was also a tenant in the same apartment complex. On appeal, the Supreme Court affirmed summary judgment in favor of the landlords. The Court first acknowledged longstanding Arkansas law that the landlord is under no legal obligation to a tenant for injuries sustained on the premises, absent a statute or agreement. *Id*. at 251. The Court then stated that the general rule is that "a landlord does not owe a tenant or social guest a duty to protect the tenant or guest from criminal acts." *Id*. The Court cited favorably the following justifications for this rule:

> Judicial reluctance to tamper with the common law concept of the landlord-tenant relationship, the notion that the act of a third person in committing an intentional tort or crime is a superseding cause of harm to another . . . ; the often times difficult problem of determining foreseeability of criminal acts; the vagueness of the standard which the landlord must meet; the economic consequences of the imposition of the duty; and the conflict with public policy allocating the duty of protecting citizens from criminal acts to the government rather than the private sector.

*Id*. at 252. Relying on the Arkansas Supreme Court's lengthy history of imposing "no legal obligation upon a landlord for a tenant's injury on the premises unless a duty is imposed by statute or agreement," the Court concluded that the landlords had not untaken the responsibility to protect its tenants from the possible criminal acts of third parties. *Id*. "In sum, a landlord, under Arkansas law, is not the insurer of the safety of tenants or others upon the premises." *Id*.

The circuit court also held that appellees had no duty to protect Franke under *Boren v. Worthen National Bank*, 324 Ark. 416, 921 S.W.2d 934 (1996), because *Boren* addressed the duty owed by a bank to its own customers, not the duty owed by a landlord to a tenant. The court found that even if *Boren* were applicable, it would not establish a duty for appellees in this case. *Boren* established three tests for "determining whether a duty of care is owed by financial institutions to protect ATM users against the criminal acts of third parties": (1) specific harm; (2) totality of the circumstances; and (3) prior similar incidents. *Id*. at 425–28, 921 S.W.2d at 940–41. The circuit court noted that the Arkansas Supreme Court specifically declined to adopt the totality-of-the-circumstances test. *Id*. at 427–28, 921

5

S.W.2d at 941. The circuit court concluded that, even if *Boren* were applicable, the evidence was insufficient to establish a duty under "specific harm" or "prior similar incidents." The order states:

> The Specific Harm test does not impose a duty because there is no evidence the [appellees] were "aware of the imminent probability of specific harm" to [Franke] by the unknown assailant or assailants who opened fire into the crowd at the party. The Prior Similar Incidents Test does not impose a duty because there were no prior incidents. To the contrary, the undisputed evidence was that [appellees] had rented the event venue to the same party (Jackson) four separate times before the event at which the shooting occurred, and there were never any reports of weapons, shootings, or violence of any kind.

From this order, Franke filed a timely notice of appeal, and this appeal followed.

## II. *Standard of Review*

This court recently set forth the standard of review for summary judgment in a negligence action as follows:

> A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Muccio v. Hunt*, 2016 Ark. 178, 490 S.W.3d 310. The burden shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment; the opposing party must demonstrate the existence of a material issue of fact. *Id.* After reviewing the evidence, the circuit court should deny summary judgment if, under the evidence, reasonable minds could reach different conclusions from the same undisputed facts. *Id.* All proof submitted must be viewed most favorably to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Wade v. Bartley*, 2020 Ark. App. 136, 596 S.W.3d 555.

> On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered. *Jackson v. Sparks Reg'l Med. Ctr.*, 375 Ark. 533, 294 S.W.3d 1 (2009). We, too, view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Id.*

> Under Arkansas law, to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries. *Bennett v. Graves & Assocs., Inc.*, 2019 Ark. App. 99, 571 S.W.3d 528. Because the question of what duty is owed is one of law, we review it de novo. *Id.*

*Hall v. Immanuel Baptist Church*, 2020 Ark. App. 301, at 1–2, 602 S.W.3d 132, 133–34.

Whether a duty exists is always a question of law, not to be decided by a trier of fact. *Hall v. Rental Mgmt., Inc.*, 323 Ark. 143, 913 S.W.2d 293 (1996). If the court finds that no duty of care is owed, the negligence count is decided as a matter of law. *Woodruff v. Western Sizzlin of Russellville, Inc.*, 2020 Ark. App. 396, at 3–4, 606 S.W.3d 607, 610.

### III. *Argument*

Franke contends that the circuit court erred in holding that appellees owed him no duty of reasonable care. He argues that the circuit court necessarily determined (a) no genuine issue of material fact existed as to whether a criminal act occurred; (b) Holland did not owe Franke a legal duty to protect from a criminal act as a matter of law; and (c) no genuine issue of material fact existed that such an act was not foreseeable. He claims that each of these determinations was incorrect and that reversal is required.

### A. Criminal Act

Franke claims that the circuit court incorrectly concluded that a criminal act occurred. He contends that because appellees seek to eliminate the duty of reasonable care that would otherwise exist, they have the burden of proving, as a matter of law, that the shooting was the result of a crime and that the shooting was a crime. *See TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 89 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting) (when the nonmoving party has the burden of

7

proof at trial, the moving party may either negate an essential element of the nonmoving party's claim or show that the nonmoving party does not have sufficient evidence to prove an essential element of its claim)). Franke argues that material questions of fact exist regarding how or why the shooting occurred.

Franke claims Holland conceded that "the shooter's identity is still unknown." He points to Holland's inability to identify who pulled the trigger, who was the intended target, or why the shooting occurred. He urges that the shooting may have been an accidental discharge or a "stray bullet." He argues that it was erroneous for the circuit court to find that "there could be [no] reasonable conclusion by a jury that repeatedly firing a gun in a crowd could be anything other than criminal."

Appellees contend that the fact the assailant or assailants who fired gunshots into the crowd have not been identified and charged is irrelevant to the summary-judgment analysis. They argue that the question of what duty is owed a plaintiff alleging negligence is always a question of law and never one for the jury. *Hall*, *supra*. They contend that the undisputed evidence establishes that the shooting was a criminal act. We agree.

Franke's complaint alleged that "one or more guns discharged randomly into the crowd" and that he "was shot twice." He testified in his deposition that he heard "numerous gunshots" after he had been shot. He said that he "was on the ground" and "still hearing gunshots." At least one other person was shot during the incident. Franke provides no legal authority for his proposition that firing "numerous gunshots" that kept ringing out into a crowd could be anything other than criminal. As argued by appellees, firing gunshots into a crowd of people violates any number of criminal statutes. *See, e.g.*, Ark. Code Ann.

8

§ 5-13-203 (Repl. 2013) (third-degree battery); Ark. Code Ann. § 5-13-205 (Repl. 2013) (first-degree assault); Ark. Code Ann. § 5-13-206 (Repl. 2013) (second-degree assault); Ark. Code Ann. § 5-13-207 (Repl. 2013) (third-degree assault); Ark. Code Ann. § 5-13-204 (Supp. 2019) (aggravated assault).

It is Franke's burden to prove that appellees owed him a duty. *Duran v. Sw. Ark. Elec. Coop. Corp.*, 2018 Ark. 33, 537 S.W.3d 722. Thus, even if this court were persuaded that shooting into a crowd is not a criminal act, Franke fails to cite any authority imposing a duty on a landowner to protect guests of his lessee from noncriminal shootings. *See Jewell v. Fletcher*, 2010 Ark. 195, 377 S.W.3d 176 (the failure to cite authority or make a convincing argument is sufficient reason for affirmance).

Franke suggests that shots being fired onto a crowded dance floor and his being hit two times may have been the result of an accident, that he may not have been the intended victim, or that he could have been hit by a "stray bullet." None of these suggestions meets the proof required to refute that Franke's injury was the result of "one or more guns discharged randomly into the crowd"—a fact as alleged by Franke in his complaint. *See Brunt v. Food 4 Less, Inc.*, 318 Ark. 427, 885 S.W.2d 894 (1994). We hold that reasonable minds could not differ on the circuit court's conclusion drawn from the facts as presented— Franke's injury is the result of a criminal act by a third party. *Id.* Viewing the evidence in the light most favorable to Franke, we hold that the circuit court committed no error in finding that Franke's injury was the result of a criminal act.

Franke argues that the circuit court applied the wrong legal authority to determine that no duty exists to protect from criminal activity. He claims that even if the shooting had been the result of a criminal act, appellees owed him a duty of ordinary care under the circumstances. He maintains that his claim is not based on premises liability but on appellees' negligent decision to allow a college warehouse party on their property. *See MIC v. Barrett*, 313 Ark. 527, 855 S.W.2d 326 (1993) (holding that restaurant owner's duty to keep premises in a safe condition not an issue in case wherein a person was beaten in the parking lot by a third party in the company of restaurant employees); *Tatum v. Rester*, 241 Ark. 1059, 412 S.W.2d 293 (1967) (holding that jury instruction on duty to keep premises safe was inapplicable wherein homeowner struck and injured hand of neighbor child while holding the car door open when he was backing his car into his carport); *Linxwiler v. El Dorado Sports Ctr., Inc.*, 233 Ark. 191, 343 S.W.2d 411 (1961) (holding that jury should have been instructed on bowling alley's liability for the conduct of his employees rather than for the condition of the premises when bystander was shot by employee who had picked up policeman's gun that had been checked in at the counter).

Franke contends that the circuit court's reliance on *Bartley*, *supra*, is incorrect. He argues that even under a premises-liability analysis, *Catlett v. Stewart*, 304 Ark. 637, 804 S.W.2d 699 (1991), mandates the application of the duty of ordinary care for landowners renting their property for one-night rentals to protect from criminal activity. In *Catlett*, the husband of an on-duty employee shot the motel guests, and they sued the motel on the basis of negligence. *Id*. "[A] hotel is not an insurer of the safety of its guests, but . . . it is

charged with the duty of taking all precautions for the protection of its guests which reasonable prudence and ordinary care would suggest." *Id.* at 642, 804 S.W.2d at 702 (citing *Ford v. Adams*, 212 Ark. 458, 206 S.W.2d 970 (1947)). Franke argues that *Catlett* concluded that "the fact that [the employee] did not foresee that [the assailant] would use a gun and harm other people did not resolve the issue of [the hotel's] negligence. Her negligence [wa]s properly measured by whether a reasonable person would have foreseen a risk of harm in the assailant's conduct." *Id.* at 642–43, 804 S.W.2d at 703.

Franke maintains that the one-night party at appellees' property more closely resembles the rental of a hotel room as opposed to a long-term lease. Franke claims that the agreement between Holland and Jackson was not a "lease" that would bring this case within the landlord-tenant principles on which the circuit court relied. He argues that the terms of their agreement—that the party would end by noon on Sunday and that the place would be returned clean—fail to contain the specificity needed to establish an oral lease for a one-night tenancy. *See Harbottle v. Cent. Coal & Coke Co.*, 134 Ark. 254, 203 S.W. 1044 (1918) (differentiating between "lease" of a mine, under which the lessee enters into possession and takes an estate in the property, and "license" of a mine, wherein the licensee has no permanent interest in the land itself but only in the proceeds from the coal). He argues that Jackson's one-night license to use the warehouse for a college party is nearly identical to a hotel guest's one-night license to occupy a hotel room. Thus, he claims that appellees owe him the same duty that the hotel owner owed its guests in *Catlett*, *supra*.

He argues that *Catlett* applies because appellees own and operate a business that rents a warehouse for parties. Thus, Franke argues that when he attended the party, he was an

11

invitee as a person who goes upon the premises of another for a purpose connected with the owner's business for a purpose connected with an activity that the owner permits on the premises. AMI Civ. 1107 (2020); *see also Little Rock Land Co. v. Raper*, 245 Ark. 641, 433 S.W.2d 836 (1968) (holding that in regard to elevators, the duty of the owner or occupier is the same duty to protect passengers using his elevators from injury as do common carriers of passengers, i.e., to exercise the highest degree of skill, care, and foresight consistent with the practical operation of the elevators to guard against accidents and injuries to passengers).

We hold that the circuit court correctly rejected Franke's argument that appellees owed him a duty of ordinary care as an invitee. *Catlett* is easily distinguishable because it addresses the duty owed by a business owner to his invitees. *Catlett* involved a motel employee's negligence in failing to warn and protect the patrons of the motel when her husband was on the premises and acting distraught for an extended period before he shot at the motel guests. *Catlett*, 341 Ark. at 641, 804 S.W.2d at 702. We hold that *Catlett* is distinguishable because Jackson is not appellees' employee. Accordingly, appellees cannot be liable for any action or inaction on his part.

Appellees leased the property to Jackson, and Jackson hosted the party at which Franke was injured. Appellees were not in possession of the land on the night in question and did not owe or assume any duty for the safety of those who attended Jackson's party. Accordingly, we hold that the circuit court did not utilize the wrong legal standard to determine that appellees owed no duty to Franke.

## C. Foreseeability of Criminal Act

Franke argues that the circuit court incorrectly determined that the "criminal act" was unforeseeable. He contends that whether a duty is owed between the parties is a question of law and that the question of foreseeability and causation may be a question of fact, depending on the circumstances. He also contends that proximate causation is ordinarily a question of fact. *See Coca-Cola Bottling Co. v. Gill*, 352 Ark. 240, 100 S.W.3d 715 (2003); *Stacks v. Ark. Power & Light Co.*, 299 Ark. 136, 771 S.W.2d 754 (1989).

Franke claims that the nature of the party made the shooting foreseeable. He asserts that Holland knew alcohol was being consumed, that "guns were being brought on the premises," and that he did nothing to address the probability of violence. *Ind. Park Bus. Club v. Buck*, 252 Ark. 513, 479 S.W.2d 842 (1972) (tavern keeper under duty to use reasonable care to protect guests from reasonably foreseeable injury at the hands of others).[6]

In his reply brief, Franke contends that the existence of a duty is a legal question for the court, but he contends that "the facts inform that legal question." *See Bennett v. Graves & Assocs., Inc.*, 2019 Ark. App. 99, 571 S.W.3d 528 (holding that a prime contractor owes an independent contractor a duty to exercise ordinary care and to warn of unusually hazardous conditions, and when there is no violation of the duty to warn, courts look to the contract to see if the prime contractor retained the right of control and assumed an additional duty of care toward employees of the subcontractors). Franke argues that when

---

[6]Appellees argue that Franke's brief contains misrepresentations. They claim that (1) Holland did not admit there was no lease; instead, he said that there was a verbal lease; (2) Holland said that he did *not* understand that alcohol was being consumed at the parties and that it did not matter to him; and (3) Holland said that he knew guns were brought to the NRA events.

the facts can lead to different conclusions as to the existence of a duty under the applicable duty standard, a jury question is created.

Franke asserts that while appellees moved for summary judgment based on duty, the circuit court necessarily injected foreseeability into its ruling by stating,

> I don't see it as foreseeable. I don't think because you enter an agreement to lease premises to somebody so that kids can have a party you should not—you should foresee that somebody is going to come in and shoot up the place.

Franke contends that if the act is one that the party in the exercise of ordinary care, ought to have anticipated was likely to result in injury to others, then such person is liable for the injury proximately resulting therefrom, although he might not have foreseen the particular injury that did happen. *See Jordan v. Adams*, 259 Ark. 407, 411, 533 S.W.2d 210, 212 (1976). He argues that appellees could have foreseen that the agreement to rent a warehouse to someone in his mid-twenties, who paid $1000 up front in cash to hold a party where loud music would be played, alcohol would be consumed, and hundreds of college-age persons—including minors—would attend could create a risk of harm to persons attending the party.

Appellees argue, and we agree, that even if a duty of ordinary care applied in this case, no party owes a duty to guard against unforeseeable criminal conduct of an unknown third party. "One is ordinarily not liable for the acts of another unless a special relationship exists between the two such as master/servant or parent/child." *Keck v. Am. Emp. Agency, Inc.*, 279 Ark. 294, 300, 652 S.W.2d 2, 6 (1983). Further, "a landowner is not liable for the negligent act of a third party, when the landowner had no control over the person who committed the act, and the act was not committed on his account." *65th Ctr., Inc. v. Copeland*, 308 Ark. 456, 463, 825 S.W.2d 574, 577 (1992).

The cases cited by Franke—*Barrett*, *Tatum*, *Linxwiler*, *Buck*, and *Bennett*—do not impose liability in tort for harm resulting from unforeseeable criminal conduct of a third party; instead, liability was imposed on the defendant in those cases for his own actions or the action of his employee. Here, there was no special relationship between appellees and Jackson or between appellees and the assailant(s). Further, there is no evidence to support a conclusion that the shooting was reasonably foreseeable. To the contrary, the undisputed evidence was that appellees had rented the event venue on four occasions to Jackson before the event at which the shooting occurred, and there were never any reports of weapons, shootings, or violence of any kind. Accordingly, we hold that the circuit court committed no error in granting summary judgment.

Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

*Lacy Law Firm*, by: *Brandon W. Lacy*; *Henry Law Firm, PLC*, by: *Megan Henry*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Michael McCarty Harrison* and *Kimberly D. Young*, for appellees.